RYDER, Chief Judge.
The Kissingers filed a complaint against William, Jean and James Kotsaftis to quiet title to Lot 1, Block 25, Mitchell’s Beach, and any land lying between the lot and the waters of the Gulf of Mexico. Ruth Adams filed an amended complaint against the Kissingers to quiet title to Lots 3 and 4, Block 25, Mitchell’s Beach, and any land lying between the lots and the waters of the gulf. Both eases were jointly tried without a jury. The court issued duplicate final judgments which quieted title to the land in favor of the Kotsaftis’ and Adams. We affirm.
The plat of Mitchell’s Beach subdivision was filed in 1914. The appellees are the record owners of Lots 27, 28 and 30 of Block 25. The appellants claimed title to Lots 1, 3 and 4, Block 25. On the plat, Lots 27, 28 and 30 were separated on the plat from Lots 1, 3 and 4 by a fifteen-foot alley. Lots 1, 3 and 4 lie east of and abut on the platted Gulf Avenue, which borders on the Gulf of Mexico. In 1955, the city of Madeira Beach vacated the platted Gulf Avenue right-of-way and the alley separating appellants’ and appellees’ lots.
It was the appellees’ position at trial that Lots 1, 3 and 4 and the alley separating those lots from Lots 27, 28 and 30 had slowly and imperceptibly eroded away so that Lots 1, 3 and 4 receded below the mean high water mark of the gulf, and that any land which accreted thereafter accreted to Lots 27, 28 and 30, rather than to Lots 1, 3 and 4.
The trial judge heard testimony from Thomas Huff, who had lived on Lot 26 from 1946 or 1947 to the mid-1950’s, that the platted alley which ran on the west side of Lots 26, 27 and 28 were “always under water,” and was completely submerged. The land began to accrete back in the mid-to-late 1950’s when groins were installed.
The appellants introduced evidence and presented witness testimony to prove that the land in question had not eroded away, but rather had been substantially altered by avulsions caused by hurricanes in 1950 and 1953. One month after the 1953 hurricane, the predecessors in title of appellees Kotsaftis commissioned a survey of Lot 30.
The survey indicated that the mean high water mark encroached slightly to the east of the westerly boundary of Lot 30. Several witnesses presented detailed testimony on the methodology used to prepare this survey which, although accurate in 1953, by today’s standards, was “not up to par.”
In the twenty-four page well-reasoned and well-written final judgments, which we would adopt as our own except for its length, the trial judge made specific findings of fact and included the specific evidence upon which he based his findings. After considering Huff’s testimony regarding the location of the water prior to the 1950 and 1953 hurricanes, the judge found that there was a rebuttable legal presumption of erosion. The judge acknowledged that Huff’s testimony alone would not have been enough to establish the presumption of erosion because he did not personally observe submergence of the alley for a full tidal cycle of nineteen years. However, the judge found the 1953 survey was sufficiently corroborated by Huff’s testimony. The surveyor, using the methodology which was correct by 1953 standards, used a benchmark which took the nineteen-year tidal cycle into consideration. Surveyors then calculated the mean high water mark on Lot 30 by transferring and correcting the measurement from the benchmark.
The trial judge then found that although the appellants presented evidence to overcome the presumption of erosion, they failed to come forth with any evidence of *1252 avulsion prior to 1949. Therefore, any evidence of avulsion occurring after 1949 would be insufficient to overcome the presumption created by Huffs testimony.
We are convinced that the trial judge’s findings, which are well established by the record, are correct. There is sufficient evidence that the high water mark had entirely submerged the alley at a time well before the alleged avulsions in 1950 and 1953. Furthermore, there is no specific evidence as to what changes occurred to the properties in question as a result of those storms. The survey was done under the best known practices at that time. The transference from the benchmark to Lot 30 was permissible and took the nineteen-year tidal cycle into consideration. The appellants were unable to refute the pre-1950 presumption of erosion created by Huff’s testimony as corroborated by the 1953 survey, nor have they presented any conclusive evidence that the location of mean high water mark in 1953 was caused by avulsion. Therefore, because appellants lost title to the lots by submergence, the subsequent accretions became the property of the appellees. Kruse v. Grokap, Inc., 349 So.2d 788 (Fla. 2d DCA 1977).
Affirmed.
SCHOONOVER and LEHAN, JJ., concur.